**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0052n.06

Case No. 14-5573

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Jan 15, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| KENTUCKY BANCSHARES, INC., | ) ) | |
| Defendant-Appellant. | ) ) | **O P I N I O N** |

BEFORE: SUTTON, McKEAGUE and KETHLEDGE, Circuit Judges.

**McKEAGUE, Circuit Judge.** This is an action by the Pension Benefit Guaranty Corporation ("PBGC") under 29 U.S.C. § 1303(e) to enforce its determination that Kentucky Bancshares, Inc., in terminating its Retirement Plan and Trust ("Plan"), violated provisions of Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), in particular 29 U.S.C. § 1341 and a PBGC regulation. Kentucky Bancshares allegedly failed to pay all benefit liabilities due under the terms of the Plan, as they existed on the date of termination. PBGC rejected arguments that a post-termination amendment of the Plan was effective to alter Kentucky Bancshares' obligations at the time of termination. The district court, on review of the administrative record, granted summary judgment to PBGC, holding that its decision was not

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Kentucky Bancshares timely appealed. Finding no error, we affirm.

**I**

The facts are largely undisputed; at issue is whether PBGC applied the governing statutory and regulatory provisions in a manner contrary to congressional intent. In 2008, Kentucky Bancshares undertook two major efforts in relation to administration of the Plan. First, it began implementing changes to meet the requirements of the Pension Protection Act of 2006 ("PPA"), P.L. 109-280 (2006), changes required to be completed by the end of the first plan year beginning after January 1, 2009. Pursuant to the PPA, Kentucky Bancshares undertook to incorporate new interest-rate and mortality assumptions for computing the minimum lump sum benefits payable to participants under the Plan. These changes generally allowed for payment of lower lump sum benefits under the Plan. Second, Kentucky Bancshares began making preparations to terminate the Plan by the end of 2008. It is the convergence of these two efforts that resulted in controversy. For although Kentucky Bancshares began implementing the PPA-required changes in 2008, it did not actually amend the terms of the Plan until February 2009, almost two months after the Plan had been terminated, on December 31, 2008.

In its initial decision, PBGC held that the post-termination amendment could not be given retroactive effect, per 29 C.F.R. § 4041.8, because "plan benefits are determined under the plan's provisions in effect on the plan's termination date." PBGC recognized that § 4041.8(a)(1) allows a post-termination amendment to be taken into account to the extent that it does not decrease the value of benefits, but concluded the exception did not apply. Initial Decision 4/8/11, Appellant's App'x at 68–71. Kentucky Bancshares requested reconsideration, citing two grounds. First, Kentucky Bancshares argued that evidence of its implementation of PPA-required changes

during 2008 supported the finding of a *de facto* amendment of the Plan prior to termination. PBGC rejected this argument, as did the district court, and it has not been renewed on appeal.

Second, Kentucky Bancshares argued that the post-termination amendment of the Plan *was* entitled to retroactive effect and should not be deemed to decrease the value of benefits, because the amendment was, under § 4041.8(c)(1), "necessary to meet a qualification requirement under section 401 of the [Internal Revenue] Code," 26 U.S.C. § 401. Kentucky Bancshares insisted that the amendment was "necessary" in order to conform the terms of the Plan to the manner in which the Plan operated during 2008, in accordance with the new PPA requirements. In its final decision, PBGC rejected this argument as well, determining that, although the PPA authorized the Plan amendment changes, nothing prohibited Kentucky Bancshares from affording *greater* benefits under the Plan, and that a *decrease* in the value of benefits was therefore not necessary to maintain Plan qualification under IRC § 401. Final Decision 5/9/12, Appellant's App'x at 101–04.

The district court upheld this determination, holding that Kentucky Bancshares failed to show how it was arbitrary or capricious or not in accordance with law. R. 27, Opinion and Order at 15–17, Page ID 287–89. On appeal, Kentucky Bancshares contends that the PBGC's decision is based on an erroneous interpretation of law.

## II

The district court correctly recognized that PBGC's resolution of the controversy is subject to deferential review. PBGC's final determination will be upheld unless it is shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633 (1990) (evaluating PBGC action under § 706(2)(A) "arbitrary and capricious" standard). A reviewing court may

not simply substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, the agency's decision will be upheld as long as there is a rational connection between the facts found by the agency and the choice made. *Id.* Under the "arbitrary and capricious" standard, a reviewing court may not disturb an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). We review the district court's ruling de novo. *Kentucky Waterways Alliance v. Johnson*, 540 F.3d 466, 473 (6th Cir. 2008).

### III

The fundamental premise for PBGC's decision is uncontested: "plan benefits are determined under the plan's provisions in effect on the plan's termination date." 29 C.F.R. § 4041.8(a). Kentucky Bancshares does not dispute the correctness of PBGC's initial determination that, *under the Plan's provisions in effect on the date of termination*, Kentucky Bancshares' termination of the Plan and distribution of benefits resulted in a deficiency. Neither does PBGC, for its part, contest the general proposition on which Kentucky Bancshares' position rests: a post-termination amendment *is* "taken into account . . . to the extent the amendment . . . [d]oes not decrease the value of the participant's or beneficiary's plan benefits under the plan's provisions in effect on the termination date." 29 C.F.R. § 4041.8(a)(1). But here, the post-termination amendment undeniably resulted in a decrease in the value of benefits to which participants and beneficiaries were otherwise entitled under the provisions in effect on the

termination date. The controversy thus boils down to the question whether Kentucky Bancshares' defense, based on its compliance with PPA requirements, renders PBGC's application of 29 C.F.R. § 4041.8(a)(1) and (c)(1) "not in accordance with law."

In order to be a "qualified trust" under IRC § 401(a)—i.e., qualified for favorable tax treatment under the Internal Revenue Code—a trust such as Kentucky Bancshares' Retirement Plan must meet the requirements of IRC § 411. 26 U.S.C. § 401(a)(7). Section 1107 of the PPA provides, relevantly, that an amendment of a qualifying plan made pursuant to the PPA shall not be deemed to fail to meet the qualifying requirements of IRC § 411(d)(6) during the relevant period (i.e., roughly, 2008–09) as long as: (a) the plan is operated as if the amendment were in effect during that period, (b) the amendment is adopted during that period, and (c) the amendment applies retroactively for that period. Pub. L. 109-280 § 1107.[1]

It is undisputed that Kentucky Bancshares's Plan amendment met all three of these § 1107 conditions and that the Plan therefore maintained qualifying status under IRC § 401. Yet, as PBGC reasonably concluded, the fact that Kentucky Bancshares' Plan amendment met the conditions of, and therefore complied with, § 1107—and therefore maintained the Plan's qualifying status under IRC §§ 401 and 411—does not compel the conclusion that the resultant *decrease in the value of benefits* was necessary to maintain Plan qualification under §§ 401 and 411, for purposes of 29 C.F.R. § 4041.8(a)(1) and (c)(1).

Kentucky Bancshares' contrary argument deliberately conflates "Plan amendment" (which was required for compliance with the PPA before the end of the 2009 Plan year) and

---

[1]Section 1107 is silent as to the impact of plan termination prior to adoption of the amendment during the relevant period. We assume, without deciding, that termination of Kentucky Bancshares' Plan during the relevant period has no impact on the operation of § 1107 to render the Plan amendment retroactive and to render the Plan "qualifying" under IRC §§ 401 and 411(d).

"decrease in the value of benefits" (which, to be permissible and given retroactive effect, must be shown to have been necessary to comply with IRC qualifying requirements), and ignores the impact of Plan termination. Even assuming Kentucky Bancshares was obliged to *amend* its Plan to account for changes precipitated by the PPA—despite its intention to terminate the Plan before the end of the PPA-prescribed timeline for adopting plan amendments—nothing in the PPA or the Internal Revenue Code made it *necessary* for Kentucky Bancshares to amend the Plan in a way that caused a *decrease in the value of benefits*. Or, stated otherwise, even though the PPA-authorized changes made by the Plan amendment were permissible, *for purposes of Plan qualification under IRC §§ 401 and 411*, Kentucky Bancshares has failed to identify any persuasive authority or reason for finding that the amendment did not result in an *impermissible* post-termination decrease in the value of benefits, *for purposes of 29 C.F.R. § 4041.8(a)(1) and (c)(1)*.

Kentucky Bancshares protests that PBGC's decision exalts form over substance. Kentucky Bancshares emphasizes that PBGC has acknowledged that the Plan amendment resulting in decreased benefits would have been permissible if only it had been adopted a mere two months earlier, prior to Plan termination. The PBGC's finding of a deficiency is thus said to be based on a technical timing violation of § 4041.8 that results in an unwarranted windfall to Plan participants.

The argument is not without facial appeal. Yet we are not free to simply substitute our judgment for that of the agency. The problem for Kentucky Bancshares is that PBGC's enforcement of its own regulation—29 C.F.R. § 4041.8(a) ("plan benefits are determined under the plan's provisions in effect on the plan's termination date") and § 4041.8(c)(1) (post-termination decreases are permissible if necessary to meet qualification requirements)—in a

manner consistent with the regulation's plain language and consistent with the governing statute—29 U.S.C. § 1341(b)(1)(D) ("benefit liabilities" under the plan are "determined as of the termination date")—can hardly be deemed arbitrary or capricious, an abuse of discretion, or not in accordance with law.

There is nothing irrational or implausible about PBGC's stated rationale for the decision. Its final decision explains the importance of the statutory requirements that benefit plans be established and maintained pursuant to a written instrument and that the plan specify the basis on which payments are made, so that "every employee may, on examining the plan document, determine exactly what his rights and obligations are under the plan." Final Decision 5/9/12, Appellant's App'x at 102 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)). PBGC reasonably concluded that Kentucky Bancshares' compliance with PPA § 1107 did not obviate its obligation to *also* comply with ERISA's standard termination requirements. *Id.* The two sets of requirements are not contradictory and Kentucky Bancshares has offered no explanation why it did not, could not, or should not be held to comply with both.

**IV**

Because PBGC's decision passes muster under the "arbitrary and capricious" standard of review, we **AFFIRM** the judgment of the district court.